## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| JENNY THORNLEY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No.: |
| | ) | |
| STATE OF ILLINOIS, ILLINOIS STATE | ) | Jury Demanded |
| POLICE MERIT BOARD, and JACK S. | ) | |
| GARCIA, individually, | ) | |
| | ) | |
| Defendants. | ) | |

## COMPLAINT

Plaintiff, Jenny Thornley, by and through her attorneys, Steven M. Laduzinsky and Natalie K. Wilkins of Laduzinsky & Associates, P.C., and for her Complaint against Defendants, State of Illinois, Illinois State Police Merit Board, and Jack S. Garcia, individually, states as follows:

## PARTIES

1.     Plaintiff, Jenny Thornley ("Plaintiff"), is an individual residing in Springfield, Illinois, Sangamon County.

2.     Defendant, State of Illinois (the "State of Illinois"), is the state government of Illinois with its principal place of business located in Springfield, Illinois, Sangamon County.

3.     Defendant, Illinois State Police Merit Board (the "Merit Board"), is an agency of the State of Illinois with its principal place of business located in Springfield, Illinois, Sangamon County.

4.     Defendant, Jack S. Garcia ("Garcia"), is an individual residing in Orland Park, Illinois, Cook County.

## JURISDICTION AND VENUE

5.     This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 42 U.S.C. § 2000e-5(f)(3), as this is a civil action arising under the Constitution and laws of the United States for violations of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.*, and the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq*. This Court may also exercise supplemental jurisdiction over Plaintiff's state law claims under the Illinois Human Rights Act ("IHRA"), 775 ILCS 5/1-101 *et seq.*, the State Officials and Employees Ethics Act ("Ethics Act"), 5 ILCS 430/1-1 *et seq.*, and the Whistleblower Act ("Whistleblower Act"), 740 ILCS 174/1 *et seq.*, pursuant to 28 U.S.C. § 1367(a).

6.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391 and 42 U.S.C. § 2000e-5(f)(3), because Defendants both reside in Illinois and at least one of Defendants, Defendant Garcia, resides in this District, a substantial part of the events or omissions giving rise to the claim occurred in this District, and one or more of the unlawful employment practices are alleged to have occurred in this District.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

7.     On February 27, 2020, Plaintiff timely filed a charge against the Merit Board and Garcia with the Illinois Department of Human Rights ("IDHR"), which was cross-filed with the Equal Employment Opportunity Commission ("EEOC"), alleging hostile work environment sexual harassment and retaliation resulting in Plaintiff's placement on administrative leave in February of 2020 ("February 27, 2020 Charge").

8.     On October 5, 2020, Plaintiff timely filed an additional charge against the Merit Board and Garcia with the IDHR, which was cross-filed with the EEOC, alleging quid pro quo

2

sexual harassment, retaliation, and age discrimination resulting in Plaintiff's termination on July 21, 2020 ("October 5, 2020 Charge").

9.      On October 26, 2020, Plaintiff withdrew her February 27, 2020 Charge with the IDHR.

10.     On January 4, 2021, the IDHR issued a Notice of Opt Out of the Investigative and Administrative Process, Right to Commence and Action in Circuit Court or Other Appropriate Court of Competent Jurisdiction, and Order of Administrative Closure with respect to the October 5, 2020 Charge ("IDHR Notice"), granting Plaintiff ninety-five (95) days to file a lawsuit against Defendants under state law in federal or state court. (Exhibit A).

11.     On March 12, 2021, the EEOC issued a Notice of Right to Sue Within 90 Days with respect to the February 27, 2020 Charge (Exhibit B) and the October 6, 2020 Charge (Exhibit C) (collectively, "EEOC Notices").

12.     Plaintiff's Complaint was timely filed within ninety-five (95) days of the IDHR Notice and ninety (90) days of the EEOC Notice, and Plaintiff has exhausted all administrative remedies.

## FACTUAL ALLEGATIONS

13.     In approximately May of 2013, Plaintiff was hired as the Chief Fiscal Officer and Director of Personnel for the Merit Board. Plaintiff also served as the Ethics Officer for the Merit Board.

14.     In approximately September of 2014, Emily Fox ("Emily"), a recent college graduate, was hired as the Human Resources Representative for the Merit Board, a newly-created and lower position than Plaintiff's.

15.     In approximately April of 2017, Garcia was hired as the Executive Director for the Merit Board.

16.     At all relevant times, Garcia was the highest ranking official and supervisor of the Merit Board staff, including Plaintiff and Emily.

17.     On April 20, 2017, Garcia emailed the Merit Board staff, including Plaintiff, requiring that each staff member execute a series of documents, including a waiver and an authorization for personal information and background investigation.

18.     As the Ethics Officer, multiple employees reported ethical concerns to Plaintiff related to Garcia's request for their personal information and background reports beyond what was already included in their personnel files.

19.     Plaintiff then reported Garcia's conduct to Roger Heaton ("Heaton"), the chief of staff for the Governor at the time, and the Office of Executive Inspector General ("OEIG"), the administrative agency responsible for investigating allegations of fraud, abuse, mismanagement, misconduct, and other violations of related laws and rules on behalf of the Office of Governor.

20.     A few weeks later, in approximately May of 2017, Garcia asked Plaintiff to meet him at his office in Tinley Park, Illinois, Cook County, which he maintained in addition to the Merit Board staff's Springfield office as it was closer to his home, to go over the Merit Board's budget reports.

21.     Garcia insisted that Plaintiff come alone to the meeting, although at least one other staff member offered to attend the meeting with Plaintiff.

22.     During the meeting, Garcia and Plaintiff were sitting in separate chairs side-by-side, and Garcia reached over and grabbed Plaintiff's leg.

23.     Plaintiff attempted to move her chair away from Garcia, however, Garcia then moved his chair closer to Plaintiff.

24.     Plaintiff then stood up and went to the bathroom to remove herself from the situation.

25.     When Plaintiff returned from the bathroom, she advised Garcia that she needed to return to Springfield, but Garcia insisted that they have lunch before she left.

26.     Plaintiff declined Garcia's lunch invitation multiple times but Garcia became very persistent, so Plaintiff agreed to go to lunch with Garcia.

27.     During lunch, Garcia began asking Plaintiff personal questions of a personal, provocative, and/or sexual nature, at which point Plaintiff became teary eyed and visibly upset as a result of her discomfort.

28.     Shortly after this incident, in approximately June of 2017, Garcia advised the Merit Board staff, including Plaintiff, not to file any further complaints or reports related to Garcia's conduct with any outside agencies, including the OEIG, because Garcia had "connections."

29.     That same day, Garcia removed Plaintiff as Ethics Officer and made the Merit Board's legal counsel, Daniel Dykstra ("Dykstra"), the Ethics Officer for the Merit Board.

30.     The Ethics Officer for the Merit Board served as the Merit Board's internal control point for ethics and improprieties, allegations, complaints, and other governance issues.

31.     During the period of June of 2017 to January 23, 2020, Plaintiff made numerous reports and complaints of misconduct to Dykstra, in his capacity as Ethics Officer for the Merit Board, related to Garcia's conduct, including that Garcia:

        a.  Falsified timekeeping records;
        b.  Charged non-business expenses to the Merit Board;
        c.  Misused Merit Board funds;

5

d. Performed work related to the Illinois State Police Heritage Foundation ("ISP Heritage Foundation"), a 501(c)(3) non-profit corporation committed to preserving the history of the Illinois State Police with no formal relationship with the Merit Board, on Merit Board time;

e. Installed police lights and sirens on his vehicle and used them to drive in the emergency lane and avoid traffic;

f. Misused state vehicles for purposes not related to the Merit Board;

g. Improperly involved himself in Merit Board cases;

h. Falsely acted with or portrayed himself to have police authority; and

i. Removed the required notices for employees about their rights to be free from illegal discrimination and sexual harassment in the workplace.

32. In addition to the complaints identified in paragraph 31, Plaintiff also reported to Dykstra on multiple occasions concerns related to Garcia and Emily and their relationship.

33. Specifically, Thornley reported that Garcia was allowing Emily to bill excessive overtime, including time that Emily had not actually worked. For example, in 2019, Emily billed over 730 hours of overtime and was unlawfully compensated for thousands of dollars of overtime for which she did not actually work.

34. In addition, Garcia sought multiple pay raises for Emily, with 20% or more increases in her pay each time, and Garcia and Emily would regularly travel together for "business" and charge the Merit Board for their expenses.

35. Despite Plaintiff's numerous complaints, Dykstra did not take any corrective action with respect to Plaintiff's complaints, including those identified in paragraphs 31-34.

36. Dykstra was often present when the conduct identified in paragraphs 31-34 occurred and still failed to take any corrective action.

37. For example, Dykstra and Plaintiff were both in the car on at least one occasion when Garcia turned on the police lights and sirens unlawfully affixed to his vehicle and drove on the shoulder of the highway to avoid traffic.

38.     Dykstra was also aware of Garcia's removal of the required notices regarding employees' rights to be free from illegal discrimination and sexual harassment and allowed Garcia to store said notices in a closet.

39.     Work for the Heritage Foundation was also constantly going through and taking place in the Merit Board's office, including the storage of piles of cash unrelated to the Merit Board which Garcia left in plain view of those in the Merit Board's office, including Dykstra.

40.     On at least four (4) to five (5) occasions, Plaintiff also discussed some of the complaints identified in paragraphs 31-34 with Heaton, but Heaton also failed to take any corrective action.

41.     During the period of June of 2017 to January 23, 2020, Garcia also continuously engaged in other conduct directed towards Plaintiff that was of a harassing and offensive nature, including making comments about Plaintiff's appearance, calling Plaintiff late at night to discuss non-work-related matters, and reprimanding Plaintiff if she did not answer his calls.

42.     At times Dykstra witnessed the conduct alleged in paragraph 41 and still failed to take any corrective action.

43.     On January 23, 2020, Plaintiff was in Garcia's office in Springfield reviewing paperwork when Garcia approached Plaintiff from behind and groped her breast.

44.     Plaintiff immediately rebuffed Garcia's advance and pushed his arm and hand away from her breast.

45.     When Plaintiff turned around to face Garcia, he stated "maybe if you dressed a little more like Emily, we would get along better."

46.     Plaintiff then left the office and called her doctor, as she was emotionally traumatized and had significant bruising on her right breast as a result of Garcia grabbing her breast.

47.     After Garcia's sexual assault on January 23, 2020, Plaintiff did not feel she was able to work and called in sick through January 27, 2020.

48.     On January 28, 2020, Plaintiff's physician advised Plaintiff to take sick leave for the remainder of the week due to reactions she was having to Garcia's sexual assault on January 23, 2020.

49.     On January 30, 2020, Plaintiff submitted an online charge form with the IDHR related to Garcia's sexual assault.

50.     On February 1, 2020, Plaintiff also filed a complaint with the OEIG related to Garcia's sexual assault and the other conduct identified in paragraphs 31-34, 41.

51.     On February 2, 2020, the General Counsel for the Office of Governor called Plaintiff and told her not to report to work until further notice.

52.     On February 4, 2020, the Merit Board posted a public notice of an emergency meeting to be held later that day, which was in violation of the Open Meetings Act which requires at least forty-eight (48) hours' notice.

53.     The public notice stated that the meeting would be held at The James R. Thompson Center, 100 W. Randolph Street, Chicago, Room 2-026. (Exhibit D).

54.     On February 11, 2020, Plaintiff had an interview with the OEIG regarding her complaints related to Garcia's sexual harassment and the other conduct identified paragraphs 31-34, 41.

55.     Two (2) days after Plaintiff's interview with the OEIG, on February 13, 2020, Dykstra emailed Plaintiff notifying her that she was being placed on administrative leave as a result of "misconduct" that was reported by Garcia to the Merit Board on February 2, 2020. (Exhibit E).

56.     Dykstra did not specify the allegations against Thornley but stated that an "independent investigation" was going to be performed by McGuireWoods, the law firm in which Heaton was a partner of.

57.     Thornley, through her counsel, advised Dykstra of the conflict of interest with McGuireWoods given Thornley's complaint with the OEIG involved Heaton and his failure to take corrective action with respect to her reports of misconduct by Garcia.

58.     Despite this conflict, Dykstra stated McGuireWoods would continue to conduct the "independent investigation."

59.     In approximately June of 2020, McGuireWoods issued a notice to Plaintiff, requesting that she appear for an interview on June 24, 2020.

60.     Due to issues related to Plaintiff's health which eventually required hospitalization, Plaintiff, through counsel, advised Dykstra that Plaintiff would not be able to attend the interview on June 24, 2020 and requested to reschedule the interview.

61.     Dykstra refused to reschedule the interview though and stated that he had "evidence" that Plaintiff was not sick.

62.     Without allowing Plaintiff to reschedule her interview and participate in the "independent investigation," and without providing Plaintiff with notice of any of the purported evidence against her, McGuireWoods conclusively determined that the allegations of misconduct against Plaintiff were true.

63.     Accordingly, at their meeting on July 21, 2020, the Merit Board terminated Plaintiff. (Exhibit F).

64.     Pursuant to the public notice for the July 21, 2020 Merit Board meeting, the meeting was conducted via telephone conference at (312) 626-6799, a Chicago area code. (Exhibit G).

65.     Several of the members of the Merit Board reside in Chicago, Illinois, Cook County and often conduct Merit Board business in Chicago, Illinois, Cook County.

66.     The meeting minutes from the July 21, 2020 Merit Board meeting that were published to the public also specifically referenced Plaintiff and her "discipline", although historically individual employees were not specifically named in the minutes. (Exhibit H).

67.     At the time of Plaintiff's termination, Plaintiff was forty (40) years of age.

68.     At the time of Plaintiff's termination, Emily was twenty-nine (29) years of age.

69.     Immediately following Plaintiff's termination, Emily was promoted to Plaintiff's position as Chief Fiscal Officer and Director of Personnel.

**COUNT I**
**QUID PRO QUO SEXUAL HARASSMENT UNDER 42 U.S.C. § 2000e-2(a)(1)**
**PLAINTIFF v. STATE OF ILLINOIS AND MERIT BOARD**

70.     Plaintiff reasserts and realleges paragraphs 1 through 69 of Plaintiff's Complaint as paragraph 70 of Count I of Plaintiff's Complaint as though fully set forth herein.

71.     At all relevant times, the State of Illinois was an "employer" as defined under 42 U.S.C. § 2000e(b), as it is a government engaged in an industry affecting commerce and has fifteen (15) or more employees for each working day in each of twenty (20) or more calendar weeks in the current or preceding calendar year.

72.     At all relevant times, the Merit Board was an "employer" as defined under 42 U.S.C. § 2000e(b), as it is a governmental agency engaged in an industry affecting commerce and

has fifteen (15) or more employees for each working day in each of twenty (20) or more calendar weeks in the current or preceding calendar year.

73.     At all relevant times, Plaintiff was an "employee" of the State of Illinois and the Merit Board, as defined under 42 U.S.C. § 2000e(f), and Garcia was Plaintiff's direct supervisor.

74.     At all relevant times, Plaintiff was a member of a protected class based on her sex, and the State of Illinois and the Merit Board were aware of Plaintiff's membership in a protected class based on her sex.

75.     On January 23, 2020, Plaintiff was subjected to an unwanted sexual advance or physical conduct of a sexual nature when her direct supervisor, Garcia, came from behind her and grabbed her breast with his hand.

76.     Garcia's sexual advance or physical conduct in grabbing Plaintiff's breast was unwelcome, as Plaintiff neither requested nor consented to Garcia grabbing her breast, and Plaintiff immediately rebuffed his sexual advance or physical conduct by pushing his arm and hand away from her and turning around.

77.     Garcia's sexual advance or physical conduct in grabbing Plaintiff's breast was based on her sex and sexually motivated.

78.     Garcia's sexual advance or physical conduct in grabbing Plaintiff's breast was objectively and subjectively offensive.

79.     After Plaintiff rebuffed Garcia's sexual advance or physical conduct in grabbing Plaintiff's breast, Garcia stated "maybe if you dressed more like Emily, we would get along better."

80.     Plaintiff's reaction to Garcia's sexual advance or physical conduct in grabbing Plaintiff's breast affected a tangible aspect and the terms and conditions of her employment

insomuch as she was subsequently placed on administrative leave, required to turn over all her records and company property, and terminated.

81. These adverse employment actions would not have been taken against Plaintiff but for Plaintiff's refusal of Garcia's unwelcome sexual advance or physical conduct of a sexual nature.

82. As Garcia was a supervisory agent for the State of Illinois and the Merit Board and Plaintiff's direct supervisor, the State of Illinois and the Merit Board are strictly liable for Garcia's sexual harassment.

83. As a result of the foregoing, Plaintiff suffered damages, including without limitation emotional distress, pain and suffering, mental anguish, and the cost of bringing this action.

WHEREFORE, Plaintiff, Jenny Thornley, respectfully requests this Honorable Court enter a judgment in her favor and against Defendants, State of Illinois and Illinois State Police Merit Board, and grant the following relief: (a) compensatory damages; (b) the cost of reasonable attorney fees, including litigation expenses and costs; and (c) any further relief this Court deems just and proper.

## COUNT II
## HOSTILE ENVIRONMENT SEXUAL HARASSMENT UNDER 42 U.S.C. § 2000e-2(a)(1)
## PLAINTIFF v. STATE OF ILLINOIS AND MERIT BOARD

84. Plaintiff reasserts and realleges paragraphs 1 through 69 of Plaintiff's Complaint as paragraph 84 of Count II of Plaintiff's Complaint as though fully set forth herein.

85. At all relevant times, the State of Illinois was an "employer" as defined under 42 U.S.C. § 2000e(b), as it is a government engaged in an industry affecting commerce and has fifteen

(15) or more employees for each working day in each of twenty (20) or more calendar weeks in the current or preceding calendar year.

86.     At all relevant times, the Merit Board was an "employer" as defined under 42 U.S.C. § 2000e(b), as it is a governmental agency engaged in an industry affecting commerce and has fifteen (15) or more employees for each working day in each of twenty (20) or more calendar weeks in the current or preceding calendar year.

87.     At all relevant times, Plaintiff was an "employee" of the State of Illinois and the Merit Board, as defined under 42 U.S.C. § 2000e(f), and Garcia was Plaintiff's direct supervisor.

88.     At all relevant times, Plaintiff was a member of a protected class based on her sex, and the State of Illinois and the Merit Board were aware of Plaintiff's membership in a protected class based on her sex.

89.     On January 23, 2020, Plaintiff was subjected to an unwanted sexual advance or physical conduct of a sexual nature when her supervisor, Garcia, came from behind her and grabbed her breast with his hand.

90.     Garcia's sexual advance or physical conduct in grabbing Plaintiff's breast was unwelcome, as Plaintiff neither requested nor consented to Garcia grabbing her breast, and Plaintiff immediately rebuffed his sexual advance or physical conduct by pushing his arm and hand away from her and turning around.

91.     From May of 2017 to January 23, 2020, Plaintiff was also subjected to other verbal and physical conduct of a sexual or offensive nature by Garcia, including without limitation Garcia's physical touching of Plaintiff's leg, late night non-work-related phone calls, reprimanding of Plaintiff when she did not answer his calls, and comments about Plaintiff's physical appearance.

92.     Garcia's verbal and physical conduct of a sexual or offensive nature during the period of May of 2017 to January 23, 2020 was also unwelcome, as Plaintiff neither requested or consented to such conduct.

93.     The harassing conduct identified in paragraphs 89 and 91 were based on sex and sexually motivated.

94.     The harassing conduct identified in paragraphs 89 and 91 had the effect of unreasonably interfering with Plaintiff's work performance in creating an intimidating, hostile, and offensive environment that seriously affected Plaintiff's psychological well-being and caused her to undergo regular therapy beginning in June of 2017 and psychiatric treatment in February of 2020.

95.     Garcia's sexual advance or physical conduct in grabbing Plaintiff's breast was severe or pervasive enough to create a hostile work environment, as Plaintiff was left with extensive bruising on her breast and emotional trauma requiring her to seek medical attention and take sick leave.

96.     The harassing conduct identified in paragraph 91 also contributed to and was severe or pervasive enough to create a hostile environment, as the nature and duration of the conduct significantly impacted Plaintiff's psychological well-being, detracted from Plaintiff's job performance, and discouraged Plaintiff from remaining on the job.

97.     As Garcia was a supervisory agent for the State of Illinois and the Merit Board and Plaintiff's direct supervisor, the State of Illinois and the Merit Board are strictly liable for Garcia's sexual harassment.

98.     Alternatively, the State of Illinois and the Merit Board were aware of Garcia's sexual advance or physical conduct in grabbing Plaintiff's breast on January 23, 2020 based on

Plaintiff's complaints to the IDHR and the OEIG, and through Dykstra, in his capacity as the Ethics Officer for the Merit Board, who was made aware of this incident on or about February 1, 2020.

99.     The State of Illinois and the Merit Board were also aware or should have been aware of the harassing conduct identified in paragraph 91, as Dykstra, while serving as the Ethics Officer for the Merit, was present and witnessed said conduct on multiple occasions and said conduct persisted for such a duration and with such frequency that knowledge may be inferred.

100.    The imposition of liability to the State of Illinois and the Merit Board is thus warranted based on their awareness of Garcia's conduct and creation of a hostile environment.

101.    As a result of the foregoing, Plaintiff suffered damages, including without limitation emotional distress, pain and suffering, mental anguish, and the cost of bringing this action.

WHEREFORE, Plaintiff, Jenny Thornley, respectfully requests this Honorable Court enter a judgment in her favor and against Defendants, State of Illinois and Illinois State Police Merit Board, and grant the following relief: (a) compensatory damages; (b) the cost of reasonable attorney fees, including litigation expenses and costs; and (c) any further relief this Court deems just and proper.

### COUNT III
### RETALIATION UNDER 42 U.S.C. § 2000e-3(a)
### PLAINTIFF v. STATE OF ILLINOIS AND MERIT BOARD

102.    Plaintiff reasserts and realleges paragraphs 1 through 69 of Plaintiff's Complaint as paragraph 102 of Count III of Plaintiff's Complaint as though fully set forth herein.

103.    At all relevant times, the State of Illinois was an "employer" as defined under 42 U.S.C. § 2000e(b), as it is a government engaged in an industry affecting commerce and has fifteen

(15) or more employees for each working day in each of twenty (20) or more calendar weeks in the current or preceding calendar year.

104.    At all relevant times, the Merit Board was an "employer" as defined under 42 U.S.C. § 2000e(b), as it is a governmental agency engaged in an industry affecting commerce and has fifteen (15) or more employees for each working day in each of twenty (20) or more calendar weeks in the current or preceding calendar year.

105.    At all relevant times, Plaintiff was an "employee" of the State of Illinois and the Merit Board, as defined under 42 U.S.C. § 2000e(f).

106.    Plaintiff engaged in statutorily protected activities when she opposed unlawful employment practices under Title VII and filed complaints with the IDHR and OEIG related to Garcia's sexual assault on January 23, 2020.

107.    As a result of filing complaints with the IDHR and OEIG related to Garcia's sexual harassment, Plaintiff suffered adverse employment actions and changes to the terms and conditions to her employment when she was subsequently placed on administrative leave, required to turn over all her records and company property, and terminated.

108.    These adverse employment actions would not have been taken against Plaintiff but for Plaintiff filing complaints with the IDHR and OEIG, as is evidenced by the timing and manner in which the adverse employment actions were taken.

109.    As a result of the foregoing, Plaintiff suffered damages, including without limitation emotional distress, pain and suffering, mental anguish, and the cost of bringing this action.

WHEREFORE, Plaintiff, Jenny Thornley, respectfully requests this Honorable Court enter a judgment in her favor and against Defendants, State of Illinois and Illinois State Police Merit

Board, and grant the following relief: (a) compensatory damages; (b) the cost of reasonable attorney fees, including litigation expenses and costs; and (c) any further relief this Court deems just and proper.

## COUNT IV
## AGE DISCRIMINATION UNDER 29 U.S.C. § 621 *et seq.*
## PLAINTIFF v. STATE OF ILLINOIS AND MERIT BOARD

110.    Plaintiff reasserts and realleges paragraphs 1 through 69 of Plaintiff's Complaint as paragraph 110 of Count IV of Plaintiff's Complaint as though fully set forth herein.

111.    Plaintiff's employment with the Merit Board was terminated on July 21, 2020.

112.    At the time of Plaintiff's termination, Plaintiff was forty (40) years of age.

113.    At the time of Plaintiff's termination, Emily was twenty-nine (29) years of age.

114.    At the time of Plaintiff's termination, Plaintiff was performing her job satisfactorily notwithstanding she was presently on administrative leave and directed to stay home pending the "independent investigation" conducted by McGuireWoods. Prior to being placed on administrative leave, Plaintiff had consistently performed her job satisfactorily throughout the course of her employment and received only positive performance reviews.

115.    Following Plaintiff's termination, Emily was promoted to and filled Plaintiff's position as Chief Fiscal Officer and Director of Personnel.

116.    Prior to July 21, 2020, Emily held a position lower than Plaintiff's.

117.    Plaintiff was significantly more experienced than Emily.

118.    However, Garcia continuously demonstrated favorable treatment to Emily by requesting multiple substantial pay raises for Emily and not Plaintiff.

119.    Garcia also allowed Emily to falsely bill and be compensated for thousands of dollars worth of overtime, including in 2019 when Emily falsely billed over 730 hours of overtime.

Although Plaintiff reported Emily's false billing and overtime, neither the State of Illinois nor the Merit Board or any of their agents, including Garcia and Dykstra, conducted or requested an independent investigation into Plaintiff's claims regarding Emily's timekeeping records and compensation.

120.    Immediately prior to Plaintiff being placed on administrative leave and then subsequently terminated, Garcia told Plaintiff "maybe if you dressed more like Emily, we would get along better."

121.    Garcia had on other occasions made comments to Plaintiff about how she dressed and suggesting that she dress and act more youthful.

122.    The cited reasons for Plaintiff's termination were a pretext for age discrimination in violation of 29 U.S.C. § 623.

123.    The State of Illinois and the Merit Board acted intentionally and willfully in violating the ADEA, warranting the imposition of liquidated damages.

124.    As a result of the State of Illinois and the Merit Board's intentional and willful violations of the ADEA, Plaintiff suffered damages, including without limitation loss of employment and the cost of bring this action.

WHEREFORE, Plaintiff, Jenny Thornley, respectfully requests this Honorable Court enter a judgment in her favor and against Defendants, State of Illinois and the Illinois State Police Merit Board, and grant the following relief: (a) liquidated damages; (b) back pay; (c) front pay; (d) the cost of reasonable attorney fees, including litigation expenses and costs; and (e) any further relief this Court deems just and proper.

## COUNT V
## QUID PRO QUO SEXUAL HARASSMENT UNDER 775 ILCS 5/2-102(D)
## <u>PLAINTIFF v. GARCIA</u>

125.    Plaintiff reasserts and realleges paragraphs 1 through 69 of Plaintiff's Complaint as paragraph 125 of Count V of Plaintiff's Complaint as though fully set forth herein.

126.    At all relevant times, Garcia was an "employee" of the State of Illinois and the Merit Board, as defined under 775 ILCS 5/2-101.

127.    At all relevant times, Plaintiff was an "employee" of the State of Illinois and the Merit Board, as defined under 775 ILCS 5/2-101, and Garcia was Plaintiff's direct supervisor.

128.    On January 23, 2020, Plaintiff was subjected to an unwanted sexual advance or physical conduct of a sexual nature when her direct supervisor, Garcia, came from behind her and grabbed her breast with his hand.

129.    Garcia's sexual advance or physical conduct in grabbing Plaintiff's breast was unwelcome, as Plaintiff neither requested nor consented to Garcia grabbing her breast, and Plaintiff immediately rebuffed his sexual advance or physical conduct by pushing his arm and hand away from her and turning around.

130.    Garcia's sexual advance or physical conduct in grabbing Plaintiff's breast was based on her sex and sexually motivated.

131.    Garcia's sexual advance or physical conduct in grabbing Plaintiff's breast was objectively and subjectively offensive.

132.    After Plaintiff rebuffed Garcia's sexual advance or physical conduct in grabbing Plaintiff's breast, Garcia stated "maybe if you dressed more like Emily, we would get along better."

133.    Plaintiff's reaction to Garcia's sexual advance or physical conduct in grabbing Plaintiff's breast affected a tangible aspect and the terms and conditions of her employment

insomuch as she was subsequently placed on administrative leave, required to turn over all her records and company property, and terminated.

134.    As the highest-ranking official for the Merit Board staff and Plaintiff's direct supervisor, Garcia had the authority to take adverse employment actions against Plaintiff and was involved in and/or directed the adverse employment actions taken against Plaintiff.

135.    These adverse employment actions would not have been taken against Plaintiff but for Plaintiff's refusal of Garcia's unwelcome sexual advance or physical conduct of a sexual nature.

136.    As a result of Garcia's sexual harassment and the adverse employment actions taken against Plaintiff, Plaintiff has suffered damages, including emotional harm, mental suffering, and the cost of bringing this action.

WHEREFORE, Plaintiff, Jenny Thornley, respectfully requests this Honorable Court enter a judgment in her favor and against Defendant, Jack S. Garcia, and grant the following relief: (a) compensatory damages; (b) actual damages; (c) back pay and fringe benefits; (d) interest; (e) the cost of reasonable attorney fees, including litigation expenses and costs; and (f) any further relief this Court deems just and proper.

## COUNT VI
### STATE OFFICIALS AND EMPLOYEES ETHICS ACT, 5 ILCS 430/15-10
### PLAINTIFF v. STATE OF ILLINOIS AND MERIT BOARD

137.    Plaintiff reasserts and realleges paragraphs 1 through 69 of Plaintiff's Complaint as paragraph 137 of Count VI of Plaintiff's Complaint as though fully set forth herein.

138.    At all relevant times, Plaintiff was a State employee of the State of Illinois and the Merit Board, a State agency.

139.    Plaintiff engaged in statutorily protected activity under 5 ILCS 430/15-10 when she disclosed to the OEIG the activities and practices of Garcia that Plaintiff reasonably believed were in violation of various law, rules, and regulations, including those activities and practices identified in paragraphs 31-34, by filing a complaint with the OEIG on February 1, 2020.

140.    Plaintiff also engaged in statutorily protected activity under 5 ILCS 430/15-10 when she provided information to the OEIG, who was conducting an investigation into Garcia's conduct, during their meeting on February 11, 2020.

141.    After Plaintiff filed her complaint with the OEIG and was interviewed by the OEIG regarding Garcia's conduct, Plaintiff suffered adverse employment actions and changes in the terms and conditions of her employment insomuch as she was subsequently placed on administrative leave, required to turn over all her records and company property, and terminated in violation of the Ethics Act.

142.    Plaintiff's filing of a complaint with the OEIG and participation in the investigation conducted by the OEIG into Garcia's conduct was a contributing factor in the retaliatory, adverse employment actions taken by the State of Illinois and the Merit Board.

143.    The State of Illinois' and the Merit Board's violations of the Ethics Act were intentional and willful.

144.    As a result of the State of Illinois' and the Merit Board's intentional and willful violations of the Ethics Act, Plaintiff suffered damages, including without limitation loss of employment and the costs of bringing this action.

WHEREFORE, Plaintiff, Jenny Thornley, respectfully requests this Honorable Court enter a judgment in her favor and against Defendants, the State of Illinois and the Illinois State Police Merit Board, and grant the following relief: (a) compensatory damages; (b) back pay; (c) interest;

(d) the cost of reasonable attorney fees, including litigation expenses and costs; and (e) any further relief this Court deems just and proper.

## COUNT VII
## STATE OFFICIALS AND EMPLOYEES ETHICS ACT, 5 ILCS 430/15-10
## <u>PLAINTIFF v. GARCIA</u>

145.    Plaintiff reasserts and realleges paragraphs 1 through 69 of Plaintiff's Complaint as paragraph 145 of Count VII of Plaintiff's Complaint as though fully set forth herein.

146.    At all relevant times, Plaintiff was a State employee of the State of Illinois and the Merit Board, a State agency.

147.    Plaintiff engaged in statutorily protected activity under 5 ILCS 430/15-10 when she disclosed to the OEIG the activities and practices of Garcia that Plaintiff reasonably believed were in violation of various law, rules, and regulations, including those activities and practices identified in paragraphs 31-34, by filing a complaint with the OEIG on February 1, 2020.

148.    Plaintiff also engaged in statutorily protected activity under 5 ILCS 430/15-10 when she provided information to the OEIG, who was conducting an investigation into Garcia's conduct, during their meeting on February 11, 2020.

149.    After Plaintiff filed her complaint with the OEIG and was interviewed by the OEIG regarding Garcia's conduct, Plaintiff suffered adverse employment actions and changes in the terms and conditions of her employment insomuch as she was subsequently placed on administrative leave, required to turn over all her records and company property, and terminated in violation of the Ethics Act.

150.    Plaintiff's filing of a complaint with the OEIG and participation in the investigation conducted by the OEIG into Garcia's conduct was a contributing factor in the retaliatory, adverse employment actions taken by the State of Illinois and the Merit Board.

151.    Garcia's violations of the Ethics Act were intentional and willful.

152.    As a result of Garcia's intentional and willful violations of the Ethics Act, Plaintiff suffered damages, including without limitation loss of employment and the costs of bringing this action.

WHEREFORE, Plaintiff, Jenny Thornley, respectfully requests this Honorable Court enter a judgment in her favor and against Defendant, Jack S. Garcia, and grant the following relief: (a) compensatory damages; (b) back pay; (c) interest; (d) the cost of reasonable attorney fees, including litigation expenses and costs; and (e) any further relief this Court deems just and proper.

### COUNT VIII
### WHISTLEBLOWER ACT, 740 ILCS 174/15
### PLAINTIFF V. GARCIA

153.    Plaintiff reasserts and realleges paragraphs 1 through 69 of Plaintiff's Complaint as paragraph 153 of Count VIII of Plaintiff's Complaint as though fully set forth herein.

154.    At all relevant times, Garcia was the highest-ranking official of the Merit Board and a supervisory agent of the State of Illinois and the Merit Board.

155.    At all relevant times, Garcia was acting within the scope of his authority, express or implied, as an agent and on behalf of the State of Illinois and the Merit Board in supervising the members of the Merit Board staff, including Plaintiff.

156.    Under the Whistleblower Act, an employer or an agent of an employer "may not make, adopt, or enforce any rule, regulation, or policy preventing an employee from disclosing information to a government or law enforcement agency if the employee has reasonable cause to believe that the information discloses a violation of a State or federal law, rule, or regulation." 740 ILCS 174/10.

157.    In violation of section 10 of the Whistleblower Act, Garcia implemented a policy in which the members of the Merit Board staff were prohibited from filing complaints or disclosing violations, including violations of a State or federal law, rule, or regulation, related to Garcia or the Merit Board.

158.    The Whistleblower Act further prohibits an employer or an agent of an employer from "retaliat[ing] against an employee who discloses information to a government or law enforcement agency, where the employee has reasonable cause to believe that the information discloses a violation of a State or federal law, rule, or regulation." 740 ILCS 174/15(b).

159.    In violation of section 15(b) of the Whistleblower Act, Garcia retaliated against Plaintiff for disclosing the violations alleged under paragraphs 31-34 to the OEIG.

160.    Plaintiff had reasonable cause to believe that the violations alleged under paragraphs 31-34 constituted violations of a State or federal law, rule, or regulation.

161.    After Plaintiff filed her complaint with the OEIG and was interviewed by the OEIG regarding Garcia's conduct, Plaintiff suffered adverse employment actions and changes in the terms and conditions of her employment insomuch as she was subsequently placed on administrative leave, required to turn over all her records and company property, and terminated in violation of the Whistleblower Act.

162.    Plaintiff's filing of a complaint with the OEIG and participation in the investigation conducted by the OEIG into Garcia's conduct was a contributing factor in the retaliatory, adverse employment actions taken by the State of Illinois and the Merit Board.

163.    Garcia's violations of the Whistleblower act were intentional and willful.

164.    As a result of Garcia's intentional and willful violations of the Whistleblower Act, Plaintiff suffered damages, including without limitation loss of employment and the costs of bringing this action.

WHEREFORE, Plaintiff, Jenny Thornley, respectfully requests this Honorable Court enter a judgment in her favor and against Defendants, Jack S. Garcia, and grant the following relief: (a) compensatory damages; (b) back pay; (c) interest; (d) the cost of reasonable attorney fees, including litigation expenses and costs; and (e) any further relief this Court deems just and proper.

Respectfully submitted,

**JENNY THORNLEY**

By:   /s/ Steven M. Laduzinsky
         One of her attorneys

Steven M. Laduzinsky (ARDC #: 6193407)
Natalie K. Wilkins (ARDC #: 6333548)
Laduzinsky & Associates, P.C.
216 S. Jefferson Street, Suite 301
Chicago, Illinois 60661
(312) 424-0700
admin@laduzinsky.com